UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDRES GOMEZ,

        Plaintiff,

  v.

GATES ESTATES, INC.,

        Defendant.

No. C 21-7147 WHA

**ORDER DISMISSING CASE**

## INTRODUCTION

In this action under Title III of the Americans with Disabilities Act, a blind plaintiff alleges that a realtor's website discriminates against him by failing to be usable by "screen reader software," which vocalizes visual information on websites for use by the visually impaired. Defendant moves to dismiss for lack of subject-matter jurisdiction under FRCP 12(b)(1). For the reason that follows, this case is **DISMISSED**.

## STATEMENT

Defendant Gates Estates, Inc., d/b/a Vintage Sotheby's International Realty, is a residential real estate broker doing business in Napa. As part of its business, defendant owns and operates the website located at: https://thenapahometeam.com.

Plaintiff Andres Gomez, a blind man who lives in Miami, cannot use a computer without the assistance of "screen reader software." For plaintiff's screen reader software to properly interact with a website, however, the website must be designed in a certain way. "Protocols for designing an accessible internet site rely heavily on 'alternative text': invisible code embedded beneath graphics. A blind individual can use screen reader software, which vocalizes the alternative text and describes the content of the webpage. Similarly, if the screen reader can

read the navigation links, then a blind individual can navigate the site with a keyboard instead of a mouse." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 949–50 (N.D. Cal. 2006) (Judge Marilyn H. Patel).

The complaint alleges that plaintiff "was a prospective customer who wished to access Defendant's goods and services of the Real Estate. Plaintiff visited the Website in March 2021 and July 2021 with the intent to get information about houses on sale in Northern California." The complaint alleges that because of "numerous accessibility design faults," plaintiff could not navigate defendant's website using screen reader software. Plaintiff alleges that if the website had been properly designed to be accessible by the blind, he would have been able to use it to find information about houses listed for sale by defendant. The complaint alleges plaintiff has been deterred from revisiting the website due to its inaccessibility.

The complaint asserts that plaintiff is a "tester." The instant complaint is one of five materially identical complaints all filed within a three-week span in this district by plaintiff, represented by the same counsel, against real estate brokers located in and around Napa.[1]

Defendant now moves to dismiss for lack of subject-matter jurisdiction under FRCP 12(b)(1). This order follows full briefing, a telephonic hearing, and a supplemental filing from plaintiff, as detailed below.

**ANALYSIS**

A motion under FRCP 12(b)(1) contends that the district court lacks subject-matter jurisdiction over the case. "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citations omitted).

---

[1] *Gomez v. The Magliocco Group Inc.*, No. 3:21-cv-7148-VC (N.D. Cal. Sep. 15, 2021) (Judge Vince Chhabria); *Gomez v. Smith*, No. 3:21-cv-7154-RS (N.D. Cal. Sep. 16, 2021) (Judge Richard Seeborg); *Gomez v. Naimo*, No. 4:21-cv-7328-SBA (N.D. Cal. Sep. 20, 2021) (Judge Saundra Brown Armstrong); *Gomez v. Sperow*, No. 4:21-cv-7852-YGR (N.D. Cal. Oct. 6, 2021) (Judge Yvonne Gonzalez Rogers).

1. **CLARIFICATION OF PLAINTIFF'S THEORY OF STANDING.**

At the hearing on the instant motion, the judge expressed doubt that plaintiff had standing to bring this lawsuit on sole the basis that he was a "tester" merely of the website with no intention of using defendant's services. Nonetheless, faced with a motion to dismiss a thin and ambiguous complaint, supported by a thin record, the judge invited plaintiff to file a stipulation clarifying the basis for his standing to bring this suit. An order issued the next day clarifying the judge's bench ruling (Dkt. No. 33):

> By Monday, February 14 at noon, plaintiff may file a stipulation that the basis for his standing to bring this lawsuit is that he is a "tester" *solely* for defendant's website. That is, that plaintiff only desires to use defendant's website; that plaintiff has no intent or desire to avail himself of, and that he has not been deterred from availing himself of, *the services of defendant's physical office*, as a "tester" or otherwise.

Plaintiff has timely filed a response, supported by a declaration (Dkt. No. 34). The response states in part:

> Mr. Gomez does not assert that his standing to sue in this matter is related to any present intention to patronize the realtor services of Sotheby's, but it is based as a tester with a general interest in high-end real estate divorced from any present ability to purchase property in the area. He is a dreamer and window-shopper and asserts that there is no requirement that he engage the services of the business to assert a claim for discrimination in his inability to access privileges and advantages of the website such as viewing the public listed real estate listings.
>
> He further asserts that this claim is not based on any present intention to visit the physical location . . . .

Plaintiff's accompanying declaration states in part (Dkt. No. 34-1 ¶¶ 4–7):

> With respect to real estate on the Sotheby's website, I like upscale areas. I currently live in Coral Gables, considered the "Beverly Hills" of Miami. I often dream of buying property in other places, and Napa is one of my dream destinations.
>
> It is unlikely that I would purchase a home in the near-term from one of the listings offered by the Defendant in this case, however there is value to me in consuming the information provided in real estate listings regardless of any specific plans to purchase those listings.
>
> One of the services and/or privileges provided by realtors, including the Defendant's website in this case, are active listings

> by those companies. I enjoy window shopping those listings to get an idea of what it costs to live in the area and I like imagining moving there.
>
> While I do not presently have an intention to buy any specific property at a specific time, I have a general interest in keeping up with the real estate markets. Being aware of developments in high-end real estate markets both provides me entertainment and motivates me to develop my assets in a way that might enable me to purchase property in the future.

In other words, (1) plaintiff has no desire or intent to "engage the services of the business," and (2) plaintiff's only interest in this suit is unimpeded access to the information provided on defendant's website about the homes defendant lists for sale. For the reasons that follow, plaintiff has not suffered an injury under the ADA.

2. **PLAINTIFF HAS NOT SUFFERED AN INJURY UNDER THE ADA AS CONSTRUED BY *ROBLES V. DOMINO'S PIZZA*.**

Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

To prevail on a claim of discrimination under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was discriminated against within the meaning of the ADA. *See Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

Discrimination under Title III includes:

> A failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service . . . being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(iii).

4

In *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000), our court of appeals held that Title III did not apply to an insurer who administered an employer-provided long-term disability insurance policy for purposes of a discriminatory provision in the policy. *Id.* at 1115. While an insurance office is a public accommodation as expressly provided by Section 12181(7)(F),

> All the items on this list . . . are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services. . . . [T]his context suggests that some connection between the good or service complained of and an actual physical place is required.

*Id.* at 1114. There was no such connection between the employer-provided disability insurance plan and the insurer's physical office, so Title III did not apply to the insurance plan. *Id.* at 1115.

In *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019), *cert. denied* 140 S. Ct. 122 (2019), a blind plaintiff alleged that the defendant pizzeria discriminated against him, within the meaning of the ADA, by failing to design its website and mobile app to be compatible with plaintiff's screen-reading software. Domino's website and app "allows customers to order pizzas and other products for at-home delivery or in-store pickup, and receive exclusive discounts." *Id.* at 902. Noting Section 12182(b)(2)(A)(iii)'s requirement of public accommodations to provide auxiliary aids and services when necessary to ensure that no disabled individual is segregated or otherwise treated differently, our court of appeals held:

> The alleged inaccessibility of Domino's website and app impedes access to the goods and services of its physical pizza franchises—which are places of public accommodation. Customers use the website and app to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-store pickup. This nexus between Domino's website and app and physical restaurants—which Domino's does not contest—is critical to our analysis.
>
> \*          \*          \*
>
> Unlike the insurance policy in *Weyer*, Domino's website and app facilitate access to the goods and services of a public accommodation—Domino's physical restaurants. They are two of the primary (and heavily advertised) means of ordering Domino's products to be picked up at or delivered from Domino's

5

> restaurants. We agree with the district court in this case—and the many other district courts that have confronted this issue in similar contexts—that the ADA applies to Domino's website and app, which connect customers to the goods and services of Domino's physical restaurants.

*Id.* at 905–06 (footnotes and citations omitted).

Thus, under *Robles*, a website without the "critical" nexus to a "physical" place of public accommodation is itself *not* a public accommodation within the meaning of the ADA; nor is a website a service of a public accommodation. *Id.* at 905 ("the ADA only covers 'actual, physical places where goods or services are open to the public, and places where the public gets those goods or services' . . . ." (citing *Weyer*, 198 F.3d at 1114)).[2] Instead, in our circuit, Title III applies to a website only if the website "*facilitates access to* the goods and services of a place of public accommodation," or, put differently, if the inaccessibility of the website "*impedes access to* the goods and services" of the physical location. *Ibid.* (emphasis added). Therefore, because a website is neither a public accommodation, nor a service of a public accommodation under *Robles*, plaintiff must allege and prove that the inaccessibility of the website has deterred him from using the *services of the physical location*.

Here, as merely a dreamer and window-shopper, plaintiff has affirmatively disclaimed any intention of "engag[ing] the services of the business" (Dkt. No. 34 at 1.) Plaintiff wants to look up houses for sale in Napa on defendant's website, but, under *Robles*, the ADA does not protect his general interest in being able to gather information from defendant's website unrelated to any desire to avail himself of defendant's actual services. Instead, the ADA protects plaintiff's interest in using the website only if its inaccessibility impedes his access to the services of defendant's physical office. Since plaintiff has no intent or desire to use such

---

[2] There is a split in authority on these issues. *Compare Cullen v. Netflix*, 880 F.Supp.2d 1017 (N.D. Cal. 2012) (Judge Edward J. Davila) (Title III of ADA did not apply to Netflix's website because it was not a public accommodation) *with Nat'l Ass'n of the Deaf v. Netflix*, 869 F.Supp.2d 196, 201 (D. Mass. 2012) (Judge Michael A. Ponsor) (Netflix's website qualified as a "service establishment," "place of public exhibition or entertainment," and/or "rental establishment," within the meaning of Title III and therefore the website itself was a public accommodation). *See Nat'l Fed. of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015) (Judge William K. Sessions III) (website itself was public accommodation without any connection to physical place); *Winegard v. Crain Comm's, Inc.*, 2021 WL 1198960 (S.D.N.Y. March 30, 2021) (Judge Alison J. Nathan) (website itself was public accommodation); *Winegard v. Newsday LLC*, — F.Supp.3d —, 2021 WL 3617522 (E.D.N.Y. 2021) (Judge Eric R. Komitee) (Title III did not apply to website with no connection to physical place of public accommodation)

services, the inaccessibility of the website has not impeded his access to them and, therefore, he has not suffered an injury under the ADA.

To be clear, this order does not hold that plaintiff is required to allege and prove he has the intent and ability to buy a home listed for sale by defendant. As a real estate broker, defendant offers far more services than just consummating the sale of a home. *See* Cal. Bus. & Prof. Code § 10131. For example, defendant may negotiate "leases or rents or offers to lease or rent . . . or solicit[] listings of places for rent, or solicit[] for prospective tenants . . . ." *Id.* § 10131(b). In addition, as a real estate broker, defendant "negotiates to do one or more of the following acts for another or others: (a) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or buyers of . . . real property . . . ." *Id.* § 10131(a). A real estate broker also "solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders . . . in connection with loans secured . . . by liens on real property . . . ." *Id.* § 10131(d). It would be an injury under the ADA if the inaccessibility of defendant's website impeded plaintiff's access to any service offered by defendant for which defendant is required by law to maintain a real estate broker or real estate agent license (assuming that service is a service of defendant's physical, public accommodation). Under *Robles*, defendant's website itself is not a service of defendant's business within the meaning of the ADA. And plaintiff has no interest or desire to "engage the services of the business." Therefore, he has not suffered an injury under the ADA.

3. **THE UNRUH ACT CLAIM.**

The complaint also asserts a state-law claim under California's Unruh Civil Rights Act, Cal. Civ. Code § 51. A violation of the ADA is a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f). Because this order dismisses plaintiff's federal claim for lack of subject-matter jurisdiction, dismissal of the supplemental state-law claim is mandatory, not discretionary. *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001).

4. **FUTILITY OF AMENDMENT.**

Rule 15(a)(2) provides that leave to amend should be "freely give[n] when justice so requires." If an amended complaint would be futile, leave to amend is properly denied. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, plaintiff was informed at the hearing that if he chose to proceed on the theory that he had standing merely as a tester of the website and was not required to show an intent to use defendant's services, the judge would dismiss the case so the issue could go up on appeal. Plaintiff has chosen to proceed on that theory. "Plaintiff asks that the Court find that Gomez has standing (or does not) based on the asserted declaration and record submitted" (Dkt. No. 34 at 2.) This order has obliged plaintiff. Leave to amend would be futile.

## CONCLUSION

For the foregoing reasons, this case is **DISMISSED**. This order does not address defendant's other arguments for dismissal. In particular, this order does not address the relevance of plaintiff's economic condition to his standing to bring this lawsuit.

**IT IS SO ORDERED.**

Dated: February 15, 2022

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8